## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T-GRIP LLC, | |
| Plaintiff, | Case No. 26-cv-216 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, T-Grip LLC ("Plaintiff" or "T-Grip") by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, counterfeit, and infringing versions of Plaintiff's federally registered trademark and copyrights (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Seller Names set forth on Schedule "A" hereto (collectively, the "Seller Aliases"). As set forth below, Defendants, without authorization, are using Plaintiff's federally registered trademark and copyrights by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling products bearing unlicensed and infringing versions of Plaintiff's trademark and copyrights. Additionally, Defendants are also liable for contributory infringement as they knowingly induce, cause, or materially contribute to

1

the infringing conduct of others by providing means and platforms for the sale and distribution of Infringing Products. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's trademark and copyrights, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's trademark and copyrights; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.      T-Grip LLC is a Massachusetts company whose main business is marketing and selling golf equipment. T-Grip spent a considerable amount of time researching, developing, and establishing their brand of golf equipment. T-Grip sells and will continue to sell its own golf equipment, which generates a considerable amount of revenue, via various channels including www.tgolfs.com/:



2.      T-Grip is the owner and sole rights holder to three marketing videos, created to help support and market T-Grip's golf supplies ("Copyrighted Works"). After creating the marketing videos, T-Grip registered the Copyrighted Works with the United States Copyright Office under registrations PAu 4-278-759, PAu 4-278-762, and PAu 4-278-761, all with an effective registration date on October 10, 2025.

3.      True and correct copies of the registration certificates for the Copyrighted Works are attached as Exhibit 1.

4.      T-Grip is the exclusive licensee for the "T-Grip" trademark (T-Grip Trademark). T-Grip registered the trademark with the United States Patent and Trademark Office under registration 6,429,907 with a registration date of July 20, 2021.

5.      A true and correct copy of the registration certificate for the T-Grip Trademark is attached as Exhibit 2.

6.      After obtaining the copyright and trademark registrations, T-Grip conducted an internet inquiry and discovered that the Defendants were selling products that displayed the Copyrighted Works and T-Grip Trademark to market and sell their infringing products, despite having no license or authorization to use either the Copyrighted Works or the T-Grip Trademark.

7.      On information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products utilizing T-Grip's Copyrighted Works and/or the T-Grip Trademark arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise

distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

8.      Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized, unlicensed, and infringing items bearing and utilizing Plaintiff's federally registered trademark and copyrights (the "Infringing Products"). Plaintiff has been and continues to be irreparably harmed by Defendants' infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

9.      Plaintiff therefore brings this action for federal copyright and trademark infringement pursuant to 17 U.S.C. § 501(a), et seq., 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

## JURISDICTION AND VENUE

10.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101, *et seq,* and the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.

**Personal Jurisdiction**

11.     Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from

such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at \*3 (S.D. Fla. July 18, 2016).

12.      Although the Third Circuit has not yet considered specific jurisdiction arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at \*13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at \*15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers

on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact to any particular state and have not established which forum would be proper venue to bring suit. *Id.* at *16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

13.    Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

14.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites such as AliExpress and others (the "Third Party Platforms"), under the Seller Aliases, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation

6

with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

15.    Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

16.    Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

17.    Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

18.    Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

19.    Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

20.     Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about this brand and products.

21.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

22.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

23.     Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**<u>Venue</u>**

24.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the

8

location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.,* 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with the most substantial events. *Murphy v. Humbolt Clothing Co.,* Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc,* No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)). Further, as stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania.

25.     Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to Plaintiff's Copyrighted Works and T-Grip Trademark, but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 3, each of the Defendants offers for sale products infringing upon Plaintiff's Copyrighted Works and/or T-Grip Trademark to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

| Seller ID and Doe # | Evidence |
|---|---|
| DOE #1 —<br> | Copyright Infringement |
| DOE #2 — | |

| Seller ID and Doe # | Evidence |
|---|---|
| |  |
| | Trademark and Copyright Infringement |
| DOE #15 ——   |  |

| Seller ID and Doe # | Evidence |
|---|---|
| |  |
| | Trademark and Copyright Infringement |

26.    Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy*, 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

27.    Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other United States judicial district, as provided for in Section 1391(b)(3); meaning that if the Court

rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non resident defendants may be sued in any judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.,* No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district). Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

28.    Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

29.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff T-Grip

30.    Plaintiff is a Massachusetts company whose main business is marketing and selling golf equipment and is the sole owner of three copyrights registered with the United States Copyright Office, which are asserted in this action. Plaintiff is also the exclusive licensee of a trademark registered with the United States Patent and Trademark Office, which is asserted in this

action. True and correct copies of the registrations for Plaintiff's Copyrighted Works are attached

as Exhibit 1, and exemplary screenshots of Plaintiff's Copyrighted Works are listed below:



| REGISTRATION NUMBER | IMAGE DEPOSIT |
|---|---|
| PAu 4-278-759 Motion Picture | |
| PAu 4-278-762 Motion Picture | |
| PAu 4-278-761 Motion Picture | |

A true and correct copy of the registrations for Plaintiff's T-Grip Trademark is attached as Exhibit

2 and is listed below:

| REGISTRATION NUMBER | REGISTERED TRADEMARK | INTERNATIONAL CLASSES |
|---|---|---|
| 6,429,907 | T-Grip | Class 28 |

31.     Plaintiff's registrations for the Copyrighted Works and T-Grip Trademark are valid

and enforceable.

32.     The T-Grip Trademark is distinctive when applied to Plaintiff's Products,

demonstrating to the purchaser that the products come from Plaintiff and are manufactured to

Plaintiff's quality standards.

33.     Plaintiff's T-Grip Trademark is a famous mark, as that term is used in 15 U.S.C. §

1125(c)(1), and has been continuously used and never abandoned.

34.     Plaintiff has expended substantial time, money, and other resources in developing,

advertising, and promoting its T-Grip Trademark and Products.

35.     Plaintiff manufactures and sells products through its own online webstores and

licenses the use of the Copyrighted Works and T-Grip Trademark to a limited number of

manufacturers of golf products that are sold online around the world (collectively, the "Plaintiff's

Products"). The presence of Plaintiff's Copyrighted Works and T-Grip Trademark increases the

value of the Plaintiff's Products by increasing brand awareness and consumer confidence.

36.     The Copyrighted Works and T-Grip Trademark are intended to be used by Plaintiff

to, among other things, market and advertise Plaintiff's products, representing significant

commercial value in the marketplace with the potential to receive hundreds of thousands to

millions of dollars.

37.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Works.

38.     Plaintiff is widely advertising and promoting genuine goods utilizing Plaintiff's Copyrighted Works and T-Grip Trademark via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller Aliases are indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

39.     Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate counterfeit and Infringing Products that bear Plaintiff's T-Grip Trademark, and are advertised by utilizing Plaintiff's Copyrighted Works, by operating e-commerce stores using their respective Store Names and Store IDs set forth on Schedule "A" hereto (collectively, the "Seller Aliases").

40.     Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of

Plaintiff's licensed products, while they actually selling inferior imitations of Plaintiff's licensed products.

41.    The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

42.    These similar elements between Seller Aliases establish a logical relationship between them and suggests that Defendants' illegal operations arise out of the same transaction or occurrence.

43.    Defendants attempt to avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products. Further, many of the platforms used by Defendants including AliExpress and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names.

44.    Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network.

45.    In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## **DEFENDANTS' UNLAWFUL CONDUCT**

46.    Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's federally protected T-Grip Trademark and Copyrighted Works. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

47.    Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on platforms such as AliExpress and others.

48.    Defendants operate at least the Seller Aliases identified in Schedule A and engage in counterfeit use of Plaintiff's T-Grip Trademark and Copyrighted Works, including offering for sale and selling Infringing Products which is causing irreparable harm to Plaintiff's business.

49.    Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not.

50.    Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit 3. Exhibit 3 shows that the infringing marks used by Defendants use identical spelling to Plaintiff's T-Grip Trademark and illustrates the potential for consumer confusion between the genuine and counterfeit products.

51.    According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* (*See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-

goods), at 2). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See Combating Trafficking in Counterfeit and Pirated Goods*, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods),  Jan. 24, 2020, at 8).

52.    E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

**The Scope of Defendants' Infringing Activities**

53.    Upon information and belief, each Defendant operates more than one merchant storefront.

54.    Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

## JOINDER OF DEFENDANTS

55.    As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

56.    Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

57.     The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

58.     On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits.

59.     Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court.

60.     Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

61.     Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court.

62.     On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants appear to be an interrelated group of infringers, who create numerous

Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products.

63.    The Seller Aliases share unique identifiers, such as the following: common design elements, the same or similar counterfeit and infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit and infringing products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

64.    These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

65.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

66.    Plaintiff's Copyrighted Works constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102. Plaintiff hereby verifies that the Copyrighted Works are original and not derived from any other copyrighted work without permission.

67.    Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Works.

68.     Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works and has obtained valid copyright registrations for Plaintiff's Copyrighted Works. The copyright registrations precede the date of the alleged infringement which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 412.

69.     Defendants do not have any ownership interest in Plaintiff's Copyrighted Works.

70.     Defendants had access to Plaintiff's Copyrighted Works via the internet and, as evidenced by their sophisticated business operations and the widespread nature of Plaintiff's Copyrighted Works, had actual knowledge of Plaintiff's copyrights before engaging in the infringing activities described herein.

71.     Without authorization from Plaintiff, the original creator of the Copyrighted Works, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, products incorporating Plaintiff's Copyrighted Works, in connection with their operation of the Defendant Internet Stores.

72.     Defendants' Infringing Products incorporate works that are virtually identical to and/or are indistinguishably similar to Plaintiff's Copyrighted Works.

73.     Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5). Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe Plaintiff's copyrights through their distribution and sale of Infringing Products. Moreover, Defendants' actions have enabled and facilitated direct infringement by third parties who purchase and use the Infringing Products. By providing the means and platform for this direct infringement, Defendants are secondarily liable for contributory infringement and vicarious

22

liability, as established in *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). Their actions are inextricably linked to the underlying acts of direct infringement committed by the end-users of the Infringing Products.

74.    Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Works through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

75.    Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that use Plaintiff's Copyrighted Works without its permission.

76.    Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights. Any claim by Defendants of ignorance regarding the infringement is without merit, as the widespread nature of Plaintiff's Copyrighted Works and Defendants' sophisticated business operations make it implausible that Defendants were unaware of their infringing activities.

77.    Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

78.    Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

79.    Considering the foregoing, and as contemplated by 17 U.S.C. § 503(b), Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's Copyrighted Works by Defendants.

## COUNT II
## INFRINGEMENT OF A REGISTERED TRADEMARK
## IN VIOLATION OF 15 U.S.C. § 1114

80.     Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

81.     Plaintiff is the exclusive licensee of Plaintiff's T-Grip Trademark. The United States Registration for Plaintiff's T-Grip Trademark is in full force and effect.

82.     On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's T-Grip Trademark and are willfully infringing and intentionally using counterfeits of Plaintiff's T-Grip Trademark.

83.     Defendants' willful, intentional and unauthorized use of Plaintiff's T-Grip Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

84.     Defendants are using marks or symbols in commerce that are likely to cause confusion, or to cause mistake, or to deceive, and likely to cause purchasers and potential purchasers to falsely believe that Defendants' goods are sponsored by, approved by, or affiliated with Plaintiff, or that Plaintiff's goods are sponsored by, approved by, or affiliated with Defendants.

85.     Defendants are using in commerce marks or symbols that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's T-Grip Trademark, and the unauthorized use of Plaintiff's T-Grip Trademark by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

86. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are currently still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's T-Grip Trademark without Plaintiff's permission.

87. Defendants' use of marks in commerce that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's T-Grip Trademark constitutes willful trademark infringement of Plaintiff's rights in and to its federally registered Trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

88. After a reasonable opportunity for further investigation and discovery, it is likely the evidence will show that Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's T-Grip Trademark, and that such acts are likely to cause confusion, or to cause mistake, or to deceive. Defendants' acts are therefore intentional, willful, and are maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

89. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to reasonable attorneys' fees, treble damages, and/or enhanced profits.

90. Plaintiff is further entitled to an award of three times its damages or Defendants' profits for those Defendants found to be intentionally using a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

91. Alternatively, Plaintiff may elect at any time before judgment to recover, instead of actual damages or profits, an award of statutory damages of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale.

92.    Plaintiff has no adequate remedy at law and has been or is likely to be irreparably damaged by Defendants' use of counterfeit and/or infringing marks in the United States and will continue to be irreparably damaged unless such use is immediately and permanently enjoined by this Court. Furthermore, Plaintiff has a strong likelihood of success on the merits of its claims, given the clear and willful infringement of Plaintiff's T-Grip Trademark by Defendants, which justifies the grant of injunctive relief.

### COUNT III
### FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

93.    Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

94.    Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

95.    By using the Plaintiff's T-Grip Trademark in connection with the Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

96.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

97.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its trademark.

98.    Plaintiff submits that the balance of hardships strongly favors granting injunctive relief. While Defendants face minimal burden in ceasing their infringing activities, Plaintiff

continues to suffer significant economic harm and reputational damage from the unauthorized sale of Infringing Products. The proposed injunctive relief merely requires Defendants to stop selling Infringing Products, which imposes no undue hardship, whereas continued infringement causes substantial and irreparable harm to Plaintiff's business and brand reputation. Furthermore, granting injunctive relief would serve the public interest by protecting consumers from confusion and deception, and by maintaining the integrity of the marketplace.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following actions. Given that Defendants operate online storefronts and have the ability to control their product listings and sales activities, they have the capacity to comply with the proposed injunctive relief without undue burden:

    (a)    using Plaintiff's T-Grip Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's T-Grip Trademark;

    (b)    passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff, which is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's T-Grip Trademark;

(c)     committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d)     manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's T-Grip Trademark, including any reproductions, counterfeit copies, or colorable imitations thereof.

(e)     Reproducing, distributing, publicly displaying, and preparing derivative works based upon the Copyrighted Works;

(f)     making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Works;

(g)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(h)     aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyrights in Plaintiff's Copyrighted Works or Plaintiff's trademark for the T-Grip Trademark.

(2)    Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's Copyrighted Works and/or Plaintiff's T-Grip Trademark.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5)    Awarding Plaintiff statutory damages based on Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117(c)(2), in an amount of not less than $1,000 or more than $2,000,000 per counterfeit mark per type of good sold or offered for sale, per Defendant;

(6)    Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(7)    Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's T-Grip Trademark and/or Copyrighted Works as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(8)    Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(9)    Awarding Plaintiff any and all other relief that this Court deems just and proper.


Date: February 6, 2026                          Respectfully submitted,

                                                */s/ Keaton Smith*
                                                Keaton Smith IL #6347736
                                                Shengmao (Sam) Mu NY #5707021
                                                Abby Neu IL #6327370
                                                Ryan E. Carreon DE #7305
                                                **WHITEWOOD LAW PLLC**
                                                57 West 57th Street, 3rd and 4th Floors
                                                New York, NY 10019
                                                Telephone: 872-294-3799
                                                Email: ksmith@whitewoodlaw.com

                                                *Counsel for Plaintiff*

## **Index of Exhibits**

| Exhibit No. | Description |
| :---: | :---: |
| 1 | Copyright Registrations |
| 2 | Trademark Registrations |
| 3 | Infringement Evidence |
| 4 | CBP Counterfeit Seizure Report |
| 5 | Economic Impact of Counterfeiting Report |
| 6 | Evidence of Coordinated Infringing Activities Between Counterfeiters |

## Schedule A

| DOE # | Seller Name | Platform | Seller ID |
|---|---|---|---|
| ■ | ████ | ███ | ███ |
| ■ | ██████ | ███ | ███ |
| ■ | █████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ███ | ███ | ███ |
| ■ | ██████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ███ | ███ | ███ |
| ■ | ███ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | █████ | ███ | ███ |
| ■ | ████ | ███ | ███ |
| ■ | █████ | ███ | ███ |
| ■ | █████ | ███ | ███ |
| ■ | ████ | ███ | ███ |